IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WARREN BEELER, Individually and On Behalf of All Others Similarly Situated,<br><br>        Lead Plaintiff,<br><br>        v.<br><br>SALTON, INC., LEONHARD DREIMANN, And DAVID M. MULDER,<br><br>        Defendants. | Case No. 04 C 3658<br><br>Honorable Milton I. Shadur |

**LEAD PLAINTIFF'S MEMORANDUM
IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL**

Lead Plaintiff, by and through his counsel, respectfully submits this Memorandum In Support of Motion For Preliminary Approval.

**FACTUAL BACKGROUND**

**I.**     **NATURE OF THE LITIGATION.**

At all relevant times, Salton designed, sourced, marketed and distributed small home appliances. Complaint ¶ 23. In September 2002, several attorneys general from various states settled antitrust claims against Salton arising from allegations that Salton coerced stores into excluding competing products. *Id*. at ¶ 24. During the Class Period, Salton issued several materially misleading public statements by Dreimann and Mulder, who signed off on and prepared the statements. *Id*. at ¶¶ 25-39.[1]

---

[1] These materially misleading statements include without limitation the following November 12, 2002 SEC Form 10-Q (Compl. ¶¶ 25-26); February 5, 2003 fiscal 2003 second quarter report (Compl. ¶ 27); February 12, 2003 SEC Form 10-Q (Compl. ¶ 28); May 13, 2003 fiscal 2003 financial report (Compl. ¶ 29); May 13, 2003 SEC Form 10-Q (Compl. ¶ 31); September 4, 2003 fiscal 2003 fourth quarter (Compl. ¶ 32); September 26, 2003 SEC Form 10-K (Compl. ¶ 33); November 6, 2003 fiscal 2004 first quarter report (Compl. ¶¶ 34-35); November 12, 2003 SEC

After the close of trading on May 10, 2005, the materially false and misleading nature of the foregoing statements began to emerge. Compl. ¶ 41. Only then did it become clear that the foregoing statements were materially misleading because, in the context of the optimistic financial forecasts projected by Defendants, Salton's financial outlook was bleak. In particular, Lead Plaintiff alleges that Defendants omitted to disclose the following material facts:

1. The market for the Foreman Grill was thoroughly saturated, a fact that would materially and adversely impact growth and profit. Compl. ¶¶ 40-41.

2. Salton's antitrust settlement with 44 states' attorneys general, through which it agreed to refrain from price fixing among retailers, punishing "disobedient" retailers, and other anticompetitive conduct, materially and adversely impacted Salton's ability to meet earnings forecasts it endorsed or sponsored. Compl. ¶¶ 40-41.

3. The expenses Salton incurred to maintain its dwindling market share and to promote replacements for the George Foreman Grill were significantly higher than planned and were not "one-time" costs as Defendants' represented, but rather were recurring costs that would materially and adversely impact Salton's financial well-being. Compl. ¶¶ 40-41.

4. Salton, which was highly leveraged ($374 million indebtedness), was either in violation of certain debt agreements or would violate other debt agreements in the foreseeable future. Compl. ¶¶ 40-41.

On May 11, 2005, immediately after this information became public, the price of Salton shares fell nearly 50%, from $6.69 per share to $3.35 per share. Compl. ¶ 42.

Lead Plaintiff brings two counts on behalf of himself and the Class under the federal securities laws. Count I, against all Defendants, seeks relief for Defendants' alleged violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder. Count II, against Dreimann and Mulder, seeks relief for these individuals' alleged violations of Section 20(a) of the Exchange Act, 15 U.S.C. 78t(a).

---

Form 10-Q (Compl. ¶ 36); February 10, 2004 fiscal 2004 second quarter report (Compl. ¶¶ 37-38); February 10, 2004 SEC Form 10-Q (Compl. ¶ 39).

Defendants intend to raise several defenses to the Class' securities claims. They have vigorously denied all factual allegations of wrongdoing. Defendants contend that they engaged in no material misrepresentations or omissions, that they did not act with scienter, and that the Class cannot establish damages, proximate causation or artificial inflation of the price of Salton securities.

## II.  PROCEEDINGS TO DATE.

The operative complaint in this litigation was filed on May 26, 2004. On December 10, 2004, the Court appointed Lead Plaintiff. The Court also appointed Miller Faucher and Cafferty LLP and Lerach Coughlin Stoia Geller Rudman and Robbins LLP as Lead Counsel. Thereafter, the parties engaged in substantial, formal discovery that included interrogatories and answers thereto, document requests and production, and third parties discovery and document production. On October 17, 2005, the Court entered the parties' Agreed Order for Class Certification and certified a class consisting of persons who purchased Salton securities between November 11, 2002 and May 11, 2004. Thereafter, the parties engaged in additional discovery and follow up.

On November 15, 2005, the parties engaged in a mediation conference before the Court and reached an agreement in principle to settle the litigation on the terms set forth in the Stipulation of Settlement (the "Settlement").

## III.  THE SETTLEMENT.

The Settlement provides that Defendants will pay a total of $3 million to the Class. $2.5 million will be paid by Defendants on January 15, 2006. *See* Settlement at p. 10, ¶2.6. The remaining $500,000 will be paid by Salton 18 months after this Court enters its final judgment approving the Settlement. *See* Settlement at p. 9, ¶2.1. In exchange, Class members will release

3

Defendants and their Related Parties for all claims that were or could have been asserted in connection with the facts and events alleged in this litigation. *See* Settlement at p. 13, ¶¶ 4.1-4.3.

As set forth above, Defendant has agreed to pay $2.5 million on January 15, 2006. A portion of this amount will be used to pay the cost of notice to the Class. *See* Settlement at p. 10, ¶2.6. At the appropriate time, Lead Counsel will request the Court to approve reimbursement from the Settlement fund for all other reasonable expenses that Lead Counsel has advanced on behalf of the Class in this litigation. *See* Settlement at p. 16, ¶6.1. In addition, at the appropriate time, Lead Counsel will request the Court to approve a reasonable attorneys' fee to be paid from the Settlement fund. *See* Settlement at p. 16, ¶¶6.1-6.3.

## STANDARDS

"The parties seeking approval of a settlement, voluntary dismissal or compromise under Rule 23(e)(1) must file a statement identifying any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. Proc. 23(e)(1)(C)(2). "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *Hispanics United of DuPage County v. Village of Addison*, 988 F. Supp. 1130, 11489 (N.D. Ill. 1997). When determining approval in the class action context, the courts typically engage in a two-step process involving preliminary approval and, after notice has been provided to class members, final approval. *See Manual for Complex Litigation, Third* § 39,41 at 237 (1995).

## ARGUMENT

**I.   THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE.**

At the preliminary approval stage, the Court determines whether the proposed settlement is "within the range of possible approval." *Armstrong v. Board of School Directors of the City of*

*Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). If so, "there is [a] reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id*. *See also Ledford v. City of Highland Park*, No. 00 C 4212, 2000 WL 1053967, *2 (N.D. Ill. Jul. 31, 2000).

"Final approval" after notice is sent to the class is not presently before the Court. However, its requirements provide guidance on whether preliminary approval should be granted. Rule 23(e)(1)(C) states, "The court may approve a settlement, voluntary dismissal, or compromise that will bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(1)(C). "[T]he Court determines whether to grant final approval in light of the following eight factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. *Id.* at 314 (quoting 3B Moore's *Federal Practice* ¶ 23.80[4] at 23-521 (2d ed. 1978)); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. Dec. 27, 2000).

In this case, Plaintiff and his counsel believe that the claims asserted are meritorious and that they will previal at trial. Lead Plaintiff estimated potential damages for Salton common stock to be in teh ragne of $25 to $30 million. Defendants maintained that the Class suffered no damages under the securities laws. As this Court was advised during the recent mediation, the major obstacle to class recovery is Defendants' ability to pay a large judgment. As a result, the

5

settlement amount represents a fair recovery for the class. No matter how strong the Class' claims, there are significant impediments and risks involved in attempting to establish liability in a securities class action such as this. Moreover, there are significant risks with respect to Defendants' ability to pay any judgment at some future time. As the Court is aware, the Settlement is the product of an arms' length mediation that took place in large part before the Court and there was no collusion whatsoever. Lead Plaintiff is optimistic that the reaction of the Class to this settlement will be favorable. Finally, this Settlement has been reached only after significant effort by Lead Counsel in evaluating the pertinent documents and information obtained from discovery, third party subpoenas and otherwise. Lead Counsel is qualified and, in their opinion, they believe the proposed Settlement is fair and reasonable. Finally, Lead Counsel's anticipated request for a reasonable award of attorneys' fees from the settlement fund and for reimbursement for all costs reasonably incurred in representing the Class is fair, reasonable and consistent with the practice in the Northern District of Illinois and elsewhere. *See*, *e.g.*, *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992).

## II. THE PROPOSED NOTICE IS FAIR AND REASONABLE.

Rule 23 states, "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. Proc. 23(e). Rule 23 also provides substantive requirements as to the manner and content of class notice:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language:
> 
> - the nature of the action,
> 
> - the definition of the class certified,

- the class claims, issues, or defenses,

- that a class member may enter an appearance through counsel if the member so desires,

- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and

- the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. Proc. 23(c)(1)(B). "Class notice is sufficient if it 'may be understood by the average class member.'" *In re VMS Sec. Litig.*, No. 89 C 9448, 1992 WL 203832, *3 (N.D. Ill. Aug. 11, 1992).

In this case, Lead Counsel intend to send individual notice to all Class members who may be identified through reasonable effort. The proposed individual notice and claim forms are attached as Exhibit A-1 and Exhibit A-2 (respectively) to the Settlement. Lead Counsel also intends to publish a summary notice, and the proposed summary notice is attached as Exhibit A-3 to the Settlement. These communications clearly identify the nature of the action, the definition of the Class, and the Class' claims. The notices also clearly explain that the proposed Settlement would be binding, that Class members may enter an appearance through counsel, and Class members may exclude themselves from the Class and the Settlement. Moreover, the notices inform Class members that Lead Counsel will request the Court to award them a reasonable attorneys' fee and reimbursement of expenses reasonably incurred, and that these amounts, if any, will be paid from the Settlement fund. Finally, the communications to the Class are written in a manner that may be understood by the average Class member. Accordingly, these forms of Notice should be approved by the Court.

# CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter an Order: (1) granting preliminary approval to the Class Action Settlement; (2) scheduling a fairness hearing for purposes of determining whether to grant final approval of the Class Action Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure; (3) approving the form and content of the Notice of Pendency of Proposed Settlement of Class Action as well as Publication Notice of Pendency of Proposed Proposed Settlement of Class Action; and (4) directing that notice be provided to the Class.

Dated: December 19, 2005        By:    s/      Marvin A. Miller
                                       Marvin A. Miller
                                       Jennifer W. Sprengel
                                       Anthony F. Fata
                                       MILLER FAUCHER AND CAFFERTY LLP
                                       30 North LaSalle Street, Suite 3200
                                       Chicago, Illinois 60602
                                       Tel: (312) 782-4880

                                       Samuel H. Rudman
                                       Evan Kauffman
                                       LERACH COUGHLIN STOIA GELLER
                                       RUDMAN & ROBBINS LLP
                                       200 Broadhollow Road , Suite 406
                                       Melville, New York 11747
                                       Tel: (631) 367-7100