# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WARREN BEELER, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) ) SALTON, INC., LEONHARD DREIMANN, and DAVID M. MULDER, ) ) ) Defendants. ) | No. 04 C 3658<br><br>Judge Milton I. Shadur |

## MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF PROPOSED SETTLEMENT AND PLAN OF ALLOCATION

Lead Plaintiff, Warren Beeler ("Lead Plaintiff"), on behalf of the certified Class, respectfully submits this memorandum of law, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in support of final approval of the proposed settlement (the "Settlement") of this class action litigation (the "Litigation") and Plan of Allocation of the Net Settlement Fund.

## PRELIMINARY STATEMENT

The Settlement provides for the payment of $3 million by Defendants to the Class. Under the circumstances of this case, the amount reflects an excellent recovery to the Class. The parties sharply disputed the merits of the claims and defenses since the inception of this Litigation. This Settlement culminates two years of extensive investigation, discovery, and settlement negotiations, as well as a settlement conference before the Court.

The "fairness factors" considered by courts in the Seventh Circuit support approval of the Settlement. *See Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996)(strength of plaintiff's case, complexity of the litigation, opposition to settlement, opinion of competent counsel, stage of

proceedings, and amount of discovery conducted to be considered). These factors are examined below. Briefly, Defendants strenuously contested liability in this Litigation and would have asserted a multitude of defenses (regarding existence of misrepresentations, causation, damages, and other issues) on summary judgment or at trial. Hence, a judgment for the Class would have been uncertain. More importantly, given Salton's dire financial condition, even if the Class were to obtain a favorable judgment, Salton's ability to pay the judgment would have been highly questionable. This fact is underscored by Salton's current financial condition, which has left the Company without significant cash or liquid assets. Even if the Class' claims had ultimately proved successful in litigation, by forcing Defendants through extensive and costly litigation, the Class effectively would have been working against itself because any available insurance proceeds would have been depleted. The fact that the Class supports this Settlement is another strong indicator of its fairness. Not a single Class member has objected to the Settlement or Plan of Allocation of Settlement proceeds.

## FACTUAL BACKGROUND[1]

Lead Plaintiff moved for preliminary approval of the Settlement on December 19, 2005 and submitted a supporting memorandum on the same day. On December 27, 2005, the Court issued an Order preliminarily approving the Settlement (the "Preliminary Approval Order") and setting certain procedures and deadlines.

Pursuant to the Preliminary Approval Order, the Court-approved administrator caused the Notice of Class Action Settlement and Proof of Claim to be mailed to 7,205 potential members

---

[1] A review of the claims asserted, the procedural history of the Litigation, and the substantial efforts of Lead Counsel is set forth in the accompanying Joint Declaration of Marvin A. Miller and Samuel H. Rudman In Support of (1) Final Approval of Settlement and Plan of Allocation of Settlement Proceeds; and (2) Award of Attorneys' Fees and Reimbursement of Expenses ("Joint Declaration of Lead Counsel"), which is being filed contemporaneously herewith. The Court is respectfully referred to the Joint Declaration of Lead Counsel, which is incorporated by reference herein.

of the Class.  *See* Declaration of Christl Hansman regarding A) Mailing of The Notice of Pendency And Proposed Settlement of Class Action, and The Proof of Claim And Release Form; And B) Publication of The Summary Notice ("Hansman Declaration") ¶ 7.[2]  *See also* Joint Declaration of Lead Counsel ¶ 37.  Lead Plaintiff also published the Notice on February 10, 2006 in *Investor's Business Daily* and also published a copy of the Notice on the claim's administrator's website, www.gilardi.com, beginning February 7, 2006.  *See* Hansman Declaration ¶¶ 8-9.

## ARGUMENT

**I.     STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS.**

Rule 23 requires court approval for any settlement in a class action following reasonable notice and a hearing.  Fed. R. Civ. P. 23(e)(1)(A)-(B).  Whether to approve a settlement is within the court's discretion.  *See Isby*, 75 F.3d at 1198.  "Federal courts naturally favor the settlement of class action litigation." *Id*. at 1196 (citations omitted).  *See also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (courts should be "mindful of the strong judicial policy in favor of settlements, particularly in the class action context").

In the Seventh Circuit, the standard for approval is whether the settlement is lawful, fair, reasonable and adequate.  *See General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *Isby v. Bahy*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Abrams v. Van Kampen Funds, Inc.*, No. 01 C 7538, 2006 WL 163023, *1 (N.D. Ill. Jan. 18, 2006).  In determining whether a settlement satisfies those criteria, courts consider the following factors:

> (1) the strength of the plaintiffs' case balanced against the settlement offer; (2) the defendant's ability to pay; (3) the burdens of further litigation: (4) the amount of opposition to the settlement; (5) the presence of collusion; (6) the opinion of competent counsel; and (7) the stage of the proceedings and the amount of discovery that has been completed.

---

[2]  The Hansman Declaration is being filed contemporaneously herewith.

*See EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985); *see also Isby*, 75 F.3d at 1198; *Abrams*, 2006 WL 163023 at *1.

In applying these factors, courts recognize that the "essence of settlement is compromise." *Isby*, 75 F.3d at 1200 (quoting *Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980)). "[T]he court is not called upon to determine whether the settlement reached by the parties is the best possible deal nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000); *see also Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982) (court should not conduct a "mini-trial" of the merits of the action). Courts are not to substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002).

Lead Plaintiff respectfully submits that the Settlement is eminently fair, reasonable and adequate. The parties, through experienced counsel, have thoroughly weighed the strengths and weaknesses of their respective positions and, after extensive negotiations, have reached an informed compromise.

## II. THE PROPOSED SETTLEMENT IS LAWFUL, FAIR, REASONABLE AND ADEQUATE IN LIGHT OF THE PERTINENT FACTORS.

### A. THE STRENGTH OF PLAINTIFFS' CASE, DEFENDANTS' ABILITY TO PAY, AND THE BURDENS OF FURTHER LITIGATION STRONGLY SUPPORT FINAL APPROVAL.

Without settlement, the anticipated complexity, cost, and duration of continued litigation in securities fraud cases such as this is considerable. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, *2 (N.D. Ill. Dec. 10, 2001) ("Securities

fraud litigation is long, complex and uncertain."). Many issues in securities fraud cases such as this are dependent on the testimony of economic experts, and such complexities will only be magnified if the action proceeds to trial. *See Denney v. Jenkens & Gilchrist*, No. 03 Civ. 5460 (SAS), 2005 WL 388562, *14 (S.D.N.Y. Feb. 18, 2005) ("If this case were to be tried, both sides would be heavily dependent on...experts, further compounding the expense and complexity of this case. The burden on the parties would be significant."); *Retsky*, 2001 WL 1568856 at *2 (expectation that five experts would testify at trial, among other things, "supports the conclusion that the case is very complex"). Settlement before trial is favored. *Great Neck Capital*, 212 F.R.D. at 410 ("Given the prospects for a long and arduous trial and appeal process, settlement at this stage is beneficial to class members."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and delay of trial. These factors weigh in favor of the proposed settlement."). Taking a class action through trial is a costly and time consuming proposition. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement favored where "trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both parties and the court"); *Mexico Money*, 164 F. Supp. 2d at 1019 ("Continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time.") (citing *Isby*, 75 F.3d at 1199). The possibility of appeals only adds to potential costs. Moreover, the ability to collect on any judgment (before or after trial, or after appeals) is a factor that must be taken into consideration. *See EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d at 889; *Abrams*, 2006 WL 163023 at *1.

Here, the $3 million Settlement is a reasonable result for the Class given the unique circumstances in this Litigation. Proving the Class' claims either on summary judgment or at trial would have been a difficult proposition given the complexity of the legal issues, factual dispute and the multitude of defenses anticipated by Defendants in this Litigation. Specifically, Defendants continually maintained that they did not make any material misrepresentations and that all information regarding the George Foreman line of products was adequately disclosed. Taking the case through trial would have involved additional practical uncertainties. Following trial, the appeals process could have further drained financial resources and time. By settling now, the Class is securing a definite $3 million benefit, which would have been difficult to obtain by way of judgment following further litigation or trial (in light of the myriad, complex factual and legal issues). If the Court declines to approve the Settlement and the Class fails to obtain a favorable judgment or verdict following further litigation, the Class will be left with no recovery.

Most importantly, there is a great risk that Defendants would be unable to satisfy any judgment significantly greater than $3 million. By taking Defendants through an extensive litigation process, the Class would have effectively been working against itself. Even if successful following extensive litigation, it may have been impossible for the Class to collect on any judgment from Defendants because of Salton's dire financial condition and limited insurance policy proceeds. If the Court declines to approve the Settlement and the Class obtains a judgment following further litigation or trial, the Class might still be left with no recovery because collection may prove impossible.

Accordingly, the $3 million Settlement will provide tangible and certain relief to the Class now, without subjecting it to the risks of litigation and collection. This factor alone militates in favor of final approval of the Settlement.

### B. THE LACK OF SIGNIFICANT OPPOSITION TO THE SETTLEMENT STRONGLY SUPPORTS FINAL APPROVAL.

The reaction of the Class to the Settlement strongly supports final approval. As noted above, in accordance with the December 27, 2005 Preliminary Approval Order, Lead Plaintiff caused the Notice of Settlement to be mailed to 7,205 potential members of the Class and published in the *Investor's Business Daily* as well as on the claims administrator's website, www.gilardi.com. The time for filing objections to the Settlement, Plan of Allocation or application for attorney's fees and expenses expires on March 10, 2005. As of this filing, not a single Class member has objected to the Settlement.[3] Under these circumstances, there can be little doubt that the Class strongly supports (and does not oppose) the Settlement. *See Abrams*, 2006 WL 163023 at *2 ("Although the number of class members is large … class members have presented only a few objections.").

### C. THE ABSENCE OF COLLUSION, THE OPINIONS OF COMPETENT COUNSEL, AND THE PARTICIPATION OF THIS COURT IN THE SETTLEMENT PROCESS STRONGLY SUPPORT FINAL APPROVAL.

The active facilitation and oversight of the settlement negotiations by this Court supports the reasonableness of an ensuing settlement. *See In re AMF Bowling Sec. Litig.*, 334 F. Supp. 2d 462, 465 (S.D.N.Y. 2004) ("The participation of Judge Sweet and retired Judge Politan in the settlement process gives me confidence that they were conducted in an arms-length, non-collusive manner."); *see also Abrams*, 2006 WL 163023 at *2 (referencing court's participation

---

[3] Should any objections be received by Lead Counsel prior to the March 17, 2006 hearing on final approval of the Settlement, Lead Counsel will promptly file a brief addressing any such objection(s) prior to the hearing.

in settlement process in approving settlement). Furthermore, the opinions of competent counsel also support final approval. *See Abrams*, 2006 WL 163023 at *2 ("It is also taken into consideration that the settlement is being recommended by experienced plaintiff securities litigators.")

In this case, the parties engaged in the Settlement without a trace of collusion. In October and November 2005, the parties engaged in arms-length settlement conversations. Having refined their positions, they participated in a settlement conference with the Court on November 15, 2005. The result was a $3 million settlement, which took into consideration the various circumstances in this Litigation, the strength of Defendants' defenses, and the great uncertainty surrounding Defendants' ability to pay an amount exceeding $3 million. After careful consideration, both sides agreed to the Settlement and thus reached an agreement in principle to settle the Litigation. Under these circumstances, there is a complete absence of collusion. The Court was actively involved in the process leading to the Settlement.

### D. THE SIGNIFICANT INVESTIGATION AND DISCOVERY COMPLETED BEFORE SETTLEMENT STRONGLY SUPPORT FINAL APPROVAL.

Both the knowledge of Lead Counsel and the proceedings themselves have reached a stage where an intelligent evaluation of the Litigation and propriety of settlement can be made. *See* Joint Declaration of Lead Counsel ¶ 51. At the time the Settlement was reached, Lead Plaintiff had investigated and prosecuted the Class' claims for nearly one and a half years. Lead Plaintiff served several document requests and interrogatories upon Defendants, and received voluminous documents and information from Defendants in response thereto. Lead Plaintiff also served subpoenas upon third parties and received voluminous responsive documents. Prior to reaching a settlement, Lead Counsel reviewed more than 30,000 pages of documents that had been produced by Defendants and third parties with business relationships with Defendants,

including banks and retailers. In addition, Defendants propounded discovery on the Lead Plaintiff. Thus, the parties reached an agreement to settle at a point when they had "full understanding of the legal and factual issues surrounding [the] case." *Manchaca v. Chater*, 927 F. Supp. 692, 697 (E.D. Tex. 1996). Nothing more is required.

The comprehensiveness of efforts of Lead Counsel in this case provided Lead Plaintiff not only with a clear picture of the strengths of his own case, but also of the legal and factual defenses that Defendants would likely raise at trial. Having completed an extensive investigation which allowed them to evaluate the case, Lead Counsel have succeeded in obtaining a very good settlement without unduly prolonging the Litigation and without undertaking an expensive trial. *See In re Xcel Energy Inc.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005)("The Federal Rules of Civil Procedure 'shall be construed and administered to ensure the just, speedy, and inexpensive determination of every action.'")(quoting Fed. R. Civ. Proc. 1)(emphasis omitted)). "Under Rule 1, as officers of the court, attorneys share the responsibility with the court of ensuring that cases are 'resolved not only fairly, but without undue cost or delay.'" *Id*. (citing Fed. R. Civ. Proc. 1, Advisory Committee Notes, 1993 Amendments). Lead Plaintiff is satisfied that the Settlement was reached after lengthy investigation, research and discovery to enable him and his counsel to knowledgeably settle the case.

### III. THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR, REASONABLE AND ADEQUATE.

A plan of allocation of net settlement proceeds to the class must similarly be fair, reasonable and adequate. *See Retsky*, 2001 WL 1568856 at *3. "When formulated by competent and experienced counsel," a plan for allocation "need only have a reasonable, rational basis." *In re Global Crossing Ltd. Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (citation

omitted). "Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach." *Id*.

The Settlement will be distributed to members of the Class who sign and return a timely and valid proof of claim form in accordance with the plan of allocation described in the Notice. The claims administrator has been directed to distribute the Settlement proceeds (net of attorneys' fees, costs and claims expenses) in the following manner:

- For Class members that purchased or otherwise acquired Salton common stock between November 11, 2002 through May 10, 2004 and retained the stock at the end of May 10, 2004, the claim per share is the smaller of the following two numbers: (i) the purchase price less $3.35 (Closing Price on May 11, 2004); or (ii) $3.34. Joint Declaration of Lead Counsel ¶ 55(A)(2).

- For Class members that purchased or otherwise acquired Salton common stock between November 11, 2002 through May 10, 2004 but who sold the stock prior to May 11, 2004 the claim per share is $0.00. Joint Declaration of Lead Counsel ¶ 55(A)(1).

- For Class members that purchased or otherwise acquired the 10.75% Notes Due December 15, 2005 from November 11, 2002 through May 10, 2004 and retained the same at the end of May 10, 2004, the claim per $1,000 par value 10.75% Note is the smaller of the following two numbers: (i) the purchase price less $605.00 (Closing Price on May 11, 2004); or (ii) $245.00. Joint Declaration of Lead Counsel ¶ 55(B)(2).

- For Class members that purchased or otherwise acquired the 10.75% Note Due December 15, 2005 from November 11, 2002 through May 10, 2004, but who sold prior to May 11, 2004, the claim per $1,000 par value 10.75% Note is $0.00. Joint Declaration of Lead Counsel ¶ 55(B)(1).

- For Class members that purchased or otherwise acquired the 12.25% Note Due April 15, 2008 from November 11, 2002 through May 10, 2004 and retained the same at the end of May 10, 2004, the claim per $1,000 par value 12.25% Note is the smaller of the following two numbers: (i) the purchase price less $650.00 (Closing Price on May 11, 2004); or (ii) $150.00. Joint Declaration of Lead Counsel ¶ 55(C)(2).

- For Class members that purchased or otherwise acquired the 12.25% Note Due April 15, 2008 from November 11, 2002 through May 10, 2004 but who sold prior to May 11, 2004, the claim per $1,000 par value 12.25% Note is $0.00. Joint Declaration of Lead Counsel ¶ 55(C)(1).

The payment Class members receive will reflect their *pro rata* share after deduction of Court-approved fees and expenses. Joint Lead Counsel Declaration ¶ 55. This Plan of Allocation was formulated after consultation with experts in order to calculate a fair method of dividing the Net Settlement Fund for distribution among the Class. *Id*. ¶ 56

## **CONCLUSION**

For the foregoing reasons, Lead Plaintiff and the Class respectfully request that the Court grant final approval to the Settlement and enter final judgment in this matter.

Respectfully submitted,

LEAD PLAINTIFF

DATED: March 10, 2006     By:     s/   Marvin A. Miller
Marvin A. Miller
Jennifer Winter Sprengel
Anthony F. Fata
MILLER FAUCHER AND CAFFERTY LLP
30 North LaSalle Street, Suite 3200
Chicago, Illinois 60602
(312) 782-4880

Samuel H. Rudman  
Ellen Gusikoff  
Evan Kaufman  
LERACH COUGHLIN STOIA GELLER  
RUDMAN & ROBBINS LLP  
58 South Service Road, Suite 200  
Melville, New York 11747  
Tel: (631) 367-7100  

***Lead Counsel***